FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 20  AM 8: 27

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEROY CHATMAN #280062** | **CIVIL ACTION** |
| versus | **NO. 05-1481** |
| **JAMES D. MILLER, JR., WARDEN, WCI** | **SECTION: "D" (1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____

Petitioner, Leroy Chatman, is a state prisoner incarcerated at the Washington Correctional Institute, Angie, Louisiana. On April 19, 2001, he was convicted of distribution of cocaine within one thousand feet of a school or park in violation of La.Rev.Stat.Ann. §§ 40:967 and 981.3.[2] On August 22, 2001, he was sentenced to a term of thirty years imprisonment, with five years of the sentence to be served without benefit of parole, probation, or suspension of sentence.[3] Petitioner's conviction and sentence were affirmed by the Louisiana First Circuit Court of Appeal on June 21, 2002.[4] He then filed with the Louisiana Supreme Court an application for a supervisory and/or remedial writ[5] which was denied on September 5, 2003.[6]

On October 13, 2003, petitioner filed with the state district court an application for post-conviction relief which was denied on October 15, 2003.[7] He then filed with the Louisiana First Circuit Court of Appeal an application for a supervisory writ of review[8] which was denied on

---

[2] State Rec., Vol. II of VI, transcript of April 19, 2001, pp. 53-54; State Rec., Vol. II of VI, minute entry dated April 19, 2001.

[3] State Rec., Vol. II of VI, transcript of August 22, 2001, p. 2; State Rec., Vol. II of VI, minute entry dated August 22, 2001.

[4] State v. Chatman, No. 2002-KA-0123 (La. App. 1st Cir. June 21, 2002) (unpublished); State Rec., Vol. V of VI.

[5] State Rec., Vol. V of VI.

[6] State v. Chapman [sic], 852 So.2d 1022 (La. 2003) (No. 2002-KO-2759); State Rec., Vol. V of VI.

[7] State Rec., Vol. IV of VI.

[8] State Rec., Vol. IV of VI.

January 27, 2004.[9] He next filed with the Louisiana Supreme Court an application for a writ of certiorari[10] which was denied on March 18, 2005.[11]

On April 13, 2005, petitioner filed this application for federal *habeas corpus* relief.[12] In support of his application, he claims:

1. There was insufficient evidence to support petitioner's conviction;

2. Petitioner's sentence is excessive; and

3. Petitioner received ineffective assistance of counsel.

The state takes the position that petitioner's federal application is timely filed[13] and that he exhausted his remedies in state court.[14] Accordingly, his claims will be considered on the merits.

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits,

---

[9] State *ex rel.* Chatman v. State, No. 2003-KW-2480 (La. App. 1st Cir. Jan. 27, 2004) (unpublished); State Rec., Vol. IV of VI.

[10] State Rec., Vol. VI of VI.

[11] State *ex rel.* Chatman v. State, 896 So.2d 996 (La. 2005) (No. 2004-KH-1183); State Rec., Vol. IV of VI.

[12] Rec. Doc. 1.

[13] Rec. Doc. 7, p. 7.

[14] Rec. Doc. 7, p. 9.

pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana First Circuit Court of Appeal concisely summarized the facts of this case as follows:

On January 16, 2000, Detective Kevin Swan was working as an undercover agent with the St. Tammany Parish Narcotics Task Force. The Task Force was conducting an operation called "Jingle Bell Rock," targeted at street-level narcotics dealers throughout the St. Tammany area. According to Detective Swan, the defendant sold him four small pieces of crack cocaine in exchange for $20.00.[15]

### Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his conviction for distribution of cocaine because the evidence showed that he was entrapped. The state courts rejected this claim, which was asserted in petitioner's post-conviction application, without assigning reasons.

The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319). This Court may find the evidence sufficient even though the facts additionally support one or more reasonable hypotheses which are consistent with petitioner's claim of innocence. Foy v. Donnelly, 959 F.2d 1307, 1316 (5th Cir. 1992); see also Gibson v. Collins, 947 F.2d 780, 783 (5th Cir. 1991). "The Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan, 271

---

[15] State v. Chatman, No. 2002-KA-0123, at p. 2 (La. App. 1st Cir. June 21, 2002) (unpublished); State Rec., Vol. V of VI.

F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A sufficiency of the evidence claim presents a mixed question of law and fact. Taylor v. Day, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). Therefore, this Court must defer to the state court unless its decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

At trial, Detective Kevin Swan testified[16] that he was working undercover in Covington, Louisiana, on January 16, 2000, when he was approached by petitioner. Swan attempted to purchase $40 worth of crack cocaine, but petitioner responded that he "didn't have enough." Swan then asked to purchase $20 worth of crack cocaine, but again petitioner declined, stating that "his rocks were too small, and that he didn't want to take [Swan's] money." Petitioner then walked away, and Swan proceeded to purchase $40 worth of crack cocaine from Gerald Brown, another individual in the area. Swan then began speaking to Larry Brown, from whom he had purchased drugs on prior occasions, when he was again approached by petitioner. Petitioner then sold Swan $20 worth of crack cocaine. Swan testified that petitioner sold him "some smaller rocks, and at the end, he wiped off everything that was in his hand." After making that purchase, Swan left the area and turned over the evidence to Detective James Macintosh. The transaction with petitioner was both videotaped and audiotaped, and those tapes were entered into evidence.

---

[16] Swan's testimony appears at pages 11-39 of the trial transcript. State Rec., Vol. II of VI, transcript of April 19, 2001, pp. 11-39.

Detective Macintosh also testified at trial.[17] He stated that he tested the substance purchased by Swan from petitioner and that the test revealed the presence of cocaine. Macintosh stated that he had known petitioner for several years and was able to identify him from the videotape of the transaction.

Petitioner's specific claim is that the evidence was insufficient to support his conviction for distribution of cocaine because the evidence shows that he was entrapped. However, under Louisiana law, entrapment is an affirmative defense which a criminal defendant must raise and prove by a preponderance of the evidence. State v. Brand, 520 So.2d 114, 117 (La. 1988); State v. Chatman, 599 So.2d 335, 347 (La. App. 1st Cir. 1992); see also State v. Presson, 900 So.2d 240, 243 (La. App. 2nd Cir. 2005). In this case, petitioner candidly concedes that "the record discloses that Chatman neither asserted nor argued the affirmative defense of entrapment at trial."[18]

Moreover, contrary to petitioner's assertion, the evidence does not show that he was entrapped. "The entrapment defense will not be recognized when the law enforcement officer merely furnishes the accused with an opportunity to commit a crime to which he is predisposed." Chatman, 599 So.2d at 347. When an undercover police officer merely asks to purchase cocaine from a criminal defendant who then complies, that does not constitute entrapment under Louisiana law. State v. Bryant, 521 So.2d 494, 498 (La. App. 4th Cir. 1988). "This activity is not such an inducement as would supplant the defendant's free will, rather this compliance by the defendant to

---

[17] Macintosh's testimony appears at pages 42-51 of the trial transcript. State Rec., Vol. II of VI, transcript of April 19, 2001, pp. 42-51.

[18] Rec. Doc. 1, supporting memorandum, p. 4.

the inquiry by the law enforcement official evidences the defendant's own predisposition to commit the offense." Id.

The Court additionally notes that the evidence was otherwise sufficient to support petitioner's conviction. Under Louisiana law, "[i]n order to prove distribution of cocaine, the state had to prove that defendant transferred possession or control of the rocks of cocaine to his intended recipients." State v. Cummings, 668 So.2d 1132, 1135 (La. 1996). "The state must show (1) 'delivery' or 'physical transfer;' (2) guilty knowledge of the controlled substance at the time of the transfer; and (3) the exact identity of the controlled dangerous substance." State v. McKinney, 728 So.2d 1009, 1012 (La. App. 2d Cir. 1999). All of those elements were established at trial. Detective Swan testified that the cocaine was placed in his hand by petitioner,[19] and, additionally, the transaction was captured on videotape which was admitted into evidence. The element of guilty knowledge can obviously be inferred from Swan's testimony that he was reapproached by petitioner for the purpose of selling Swan cocaine in response to his prior request. Additionally, the identity of the substance sold was established to be cocaine through the testimony of Macintosh, who performed the field test of the substance,[20] and a laboratory analysis report.[21] Viewing the evidence in the light most favorable to the prosecution, the Court finds that any rational trier of fact could have found the

---

[19] Swan testified: "I purchased twenty dollars ($20) worth, from Mr. Leroy Chapman [sic], sitting right there, I purchased twenty dollars ($20) of crack-cocaine, which was smaller, and there wasn't much there, and he put it into my hand." State Rec., Vol. II of VI, transcript of April 19, 2001, p. 21.

[20] See State Rec., Vol. II of VI, transcript of April 19, 2001, p. 45.

[21] The laboratory report was introduced as State Exhibit 5. See State Rec., Vol. II of VI, transcript of April 19, 2001, p. 52.

essential elements of the crime beyond a reasonable doubt.

Petitioner has failed to demonstrate that the state court decision denying his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claim that there was insufficient evidence to support his conviction.

### Excessive Sentence

Petitioner next contends that his thirty-year sentence was excessive. An excessive sentence claim presents a question of law. Davis v. Cain, 44 F. Supp. 2d 792, 798 (E.D. La. 1999); see also Jones v. Kaylo, Civil Action No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999). Therefore, this Court must defer to the state court on such a claim unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's claim, holding:

> The defendant asserts that the sentence imposed by the trial court is unconstitutionally excessive. He contends that the maximum sentence, which was imposed in this case, was excessive considering the small amount of cocaine that he sold to the officer and considering that he does not have a history of violence. The defendant further argues that his actions at the time of the drug transaction were more consistent with a cocaine addict rather than a drug dealer. He points out that prior to selling cocaine to the detective, he initially walked away from the detective's car saying that he did not have enough cocaine to sell. Moreover, the defendant notes that he has admitted to and taken responsibility for being a drug addict.
> In order to preserve a claim of constitutional excessiveness, the defendant need not allege any more specific ground than that the sentence is excessive. If the

defendant does not allege any specific ground for excessiveness or present any argument or evidence not previously considered by the court at original sentencing, then the defendant does not lose the right to appeal the sentence; the defendant is simply relegated to having the appellate court consider the bare claim of excessiveness. State v. Mims, 619 So.2d 1059, 1059-1060 (La. 1993) (per curiam).

Louisiana Code of Criminal Procedure article 881.4(D) provides that the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. Because of the wide discretion afforded the trial court in imposing sentence, a sentence within statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Jones, 596 So.2d 1360, 1371 (La. App. 1 Cir.), writ denied, 598 So.2d 373 (La. 1992); State v. Payne, 540 So.2d 520, 524 (La. App. 1 Cir.), writ denied, 546 So.2d 169 (La. 1989).

A trial court's reasons in imposing sentence, as required by La. Code Crim. P. art. 894.1, are an important aid to this court when reviewing a sentence alleged to be excessive. State v. Jones, 596 So.2d at 1371. The trial court need not, however, recite the entire checklist found in Article 894.1. State v. Jones, 596 So.2d at 1371. Notwithstanding, the record must reflect that the trial court adequately considered the guidelines. State v. Davis, 448 So.2d 645, 653 (La. 1984). Even when the trial court has not complied with Article 894.1, this court need not remand the case for re-sentencing unless the sentence imposed is apparently severe in relation to the particular offender or the offense committed. State v. Carr, 530 So.2d 579, 592 (La. App. 1 Cir.), writ denied, 533 So.2d 354 (La. 1988), cert. denied, 489 U.S. 1098, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989).

A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether the penalty is so disproportionate as to shock our sense of justice. State v. Carr, 530 So.2d at 592. The maximum sentence permitted under a statute may be imposed only in cases involving the most serious crimes and the worst offenders. State v. Easley, 432 So.2d 910, 914 (La. App. 1 Cir. 1983).

Louisiana Revised Statutes 40:967 B(4)(b), as it existed in 2000, prior to recent amendments, provided the penalty for a conviction of distribution of cocaine to be a term of imprisonment at hard labor for not less than five years nor more than thirty years, with the first five years to be served without the benefit of parole, probation, or suspension of sentence. Additionally, a fine of not more than fifty thousand dollars could be imposed under the statute. While the defendant was sentenced to the maximum term of imprisonment allowed under the statute, he was not fined.

The trial court ordered a presentence investigative report and reviewed same prior to sentencing. The trial court noted that the defendant had previously been

> convicted of theft of a value over $100, possession of stolen property, criminal discharge of a firearm, and two counts of distribution of cocaine. The trial court further noted a long history of arrests for various crimes, including crimes against the person, for which the dispositions could not be determined because no records were found. The trial court chose to follow the recommendation of the presentence investigative report that the maximum term of imprisonment be imposed in order to protect the public.
>     We agree with the trial court. In light of the danger to society posed by this defendant, we find that the sentence is not disproportionate to the seriousness of the offense, nor is it purposeless and needless infliction of pain and suffering. The imposition of the maximum sentence is not excessive when a defendant poses an unusual risk to public safety due to past conduct of repeated criminality. State v. Chaney, 537 So.2d 313, 318 (La. App. 1 Cir.), writ denied, 541 So.2d 870 (La. 1989).
>     The fact that the defendant sold only a small amount of cocaine and that he initially walked away from the officer's car are inconsequential, as he chose to return and sell the cocaine to the officer. The trial court found that the evidence was sufficient to prove beyond a reasonable doubt that he was guilty of the crime of distribution of cocaine.
>     Finally, we note that the State had initially filed a multiple offender bill against the defendant, who is approximately forty-five years old, charging him as a third felony offender. The State withdrew this bill as a result of the defendant receiving the maximum term of imprisonment.[22]

To the extent petitioner is arguing that his sentence is excessive under Louisiana law, that claim is not cognizable in this federal proceeding. Federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.

Further, to the extent that petitioner is claiming that his sentence is excessive under the

---

[22] State v. Chatman, No. 2002-KA-0123, at pp. 2-5 (La. App. 1st Cir. June 21, 2002) (unpublished); State Rec., Vol. V of VI.

Eighth Amendment of the United States Constitution, his claim is without merit. In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

Accordingly, petitioner is not entitled to relief unless he can demonstrate that his sentence is grossly disproportionate to the underlying offense by comparing the gravity of that offense against the severity of the sentence.

In determining the proportionality of a sentence, this Court must look to Rummel v. Estelle,

445 U.S. 263 (1980), which "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The United States Fifth Circuit Court of Appeals has held:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

Applying this "litmus test" and considering the Rummel finding that a life sentence was not excessive when imposed for a nonviolent property offense where the habitual offender had two prior nonviolent property offenses, this Court must conclude that petitioner's sentence to a term of thirty years imprisonment was not grossly disproportionate in light of the severity of petitioner's offense, i.e. distribution of cocaine. The United States Fifth Circuit Court of Appeals reached a similar conclusion in a challenge to a *life* sentence given to a petitioner for distribution of heroin, a similarly insidious and pernicious drug, holding:

> A life sentence for the crime of distribution of heroin serves substantial state interests in the same manner that state interests were served by a life sentence for recidivism in Rummel. The state could reasonably treat heroin distribution as a serious crime equivalent to crimes of violence. It could conclude:
>
>> . . . The drug seller, at every level of distribution, is at the root of the

> pervasive cycle of drug abuse. Measured thus by the harm it inflicts
> on the addict, and, through him, upon society as a whole, drug dealing
> in its present epidemic proportions is a grave offense of high rank.

State v. Terrebonne, [364 So.2d 1290, 1292 (La. 1978)], quoting Carmona v. Ward, [576 F.2d 405 (2nd Cir. 1978)].

Terrebonne v. Blackburn, 646 F.2d 997, 1002 (5th Cir. 1981); see also Smith v. Leblanc, Civil Action No. 03-2194, 2004 WL 551215 (E.D. La. Mar. 18, 2004) (Berrigan, J.) (holding that a twenty-two year sentence for distribution of $20 worth of crack cocaine was not excessive).[23] In that the sentence is not grossly disproportionate, this Court's "inquiry is finished." Gonzales, 121 F.3d at 942.

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claim that his sentence was excessive.

<u>Ineffective Assistance of Counsel</u>

Petitioner next contends that his counsel was ineffective in failing to assert an entrapment defense. The state courts rejected petitioner's claim without assigning reasons.

---

[23] In Terrebonne, the Fifth Circuit also noted that drug distribution is a particularly serious offense due to the other crimes to which it often leads:

> "More significant, of course, are the crimes which drug traffickers engender in others. ... The addict, to meet the seller's price, often turns to crime to 'feed' his habit. Narcotics addicts not only account for a sizable percentage of crimes against property; they commit a significant number of crimes of violence as well."

Terrebonne, 646 F.2d at 1002 (quoting Terrebonne, 364 So.2d at 1292).

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697. If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Id.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination

as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner claims that his counsel was ineffective in failing to assert an entrapment defense. However, for the reasons previously noted in this opinion,[24] petitioner had no viable entrapment defense. Therefore, his counsel cannot be found to have been ineffective in failing to asset such a defense. See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996) ("[I]f there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error of failing to disclose or pursue it cannot be prejudicial." ); see also Krist v. Foltz, 804 F.2d 944, 946 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does not exist."); United States v. Washington, Cr. A. 95-124-3 and Civ. A. 97-2371, 1997 WL 327459, at *2 (E.D. Pa. June 12, 1997) (counsel is not ineffective in failing to raise a meritless defense, because the outcome of the proceeding would not have been different if the defense had been raised).

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court

---

[24] See pages 7-8 of this opinion.

of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claim that his trial counsel was ineffective.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___19TH___ day of July, 2005.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**